UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

**CIVIL ACTION NO. 07-195-DLB**

**LEONARD M. LAWSON**                                                                         **PLAINTIFF**

vs.                        **<u>MEMORANDUM OPINION & ORDER</u>**

**MICHAEL J. ASTRUE, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                                     **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

      Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and for the reasons set forth herein, hereby reverses and remands the decision of the Commissioner.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

      Plaintiff Leonard Lawson filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) payments in August, 2004. (Tr. 52-55, 165-67). Plaintiff alleges he has been unable to be gainfully employed since October 17, 2003, due to neck, back, knee, and shoulder pain; arthritis; ringing in his ears, high blood pressure; dizzy spells and vision problems, frost bite and tingling in his hands/fingers. (Tr. 72, 76, 79 186). Plaintiff's claim was denied initially on October 27, 2004 (tr. 38-41, 169-72), and again on January 19, 2005, upon reconsideration (tr. 44-46, 174-77). Plaintiff requested a hearing before an ALJ, which was held on December 1, 2005, in London, Kentucky. (Tr.

179-204). On February 10, 2006, ALJ James P. Alderisio determined that Plaintiff was not disabled under the Social Security Act and was therefore not entitled to disability benefits or SSI payments. (Tr. 16-28). This decision became the final decision of the Commissioner when the Appeals Council denied review on April 25, 2007. (Tr. 6-8).

On June 12, 2007, Plaintiff filed the instant action. The matter has culminated in cross motions for summary judgment, which are now ripe for review.

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Secretary of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national

economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 19). At Steps 2 and 3, the ALJ found Plaintiff's degenerative disc disease and arthritis of his knees to be severe impairments. (*Id.*). However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments severe enough to meet or medically equal any listed impairment in Appendix 1, Subpart P, Regulation No. 4. (*Id.*)

At Step 4, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to perform light exertional work; that is, lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. The ALJ found that Plaintiff is capable of sitting, standing, and/or walking for 6 hours in an 8-hour workday, but with an added requirement of having an option to sit/stand every hour. The ALJ also found that he could occasionally stoop, bend, crouch, and crawl, and should avoid climbing ladders and scaffolds. (Tr. 23). The ALJ determined that, given his RFC, Plaintiff cannot return to his past relevant work as a small mower repair person. (*Id.*).

The ALJ therefore proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found there were a significant number of jobs available to Plaintiff in both the national and regional economies despite his limitations. (Tr. 25). This conclusion resulted from testimony by a vocational expert (VE), in response to a hypothetical question

assuming an individual of Plaintiff's age (45 at the time of the hearing and so a "younger" individual pursuant to 20 C.F.R. §§ 404.1563 and 416.963), education (seventh grade, and so a "limited" education pursuant to 20 C.F.R. §§ 404.1564 and 416.964), past relevant work experience (no transferable skills at issue pursuant to 20 C.F.R. §§ 404.1568 and 416.968), and RFC. (Tr. 200-01).  The VE testified that work as a sorter was available at this exertional level with the vocational considerations provided by the ALJ. (*Id.*).  Since the VE testified that there are positions of significant number in both the regional and national economies for this job, the ALJ concluded Plaintiff was therefore not disabled under the Social Security Act.  (Tr. 27).

**C.     Analysis**

Plaintiff raises two related arguments on appeal.  He contends that the ALJ failed to weigh and consider all of the expert medical information provided by his treating physician, Dr. Bernard Moses, and failed to do so under the applicable legal standard.  He submits that due to this error, the RFC reached by the ALJ was flawed; therefore, its use in the hypotheticals presented to the VE could not serve as substantial evidence in support of the ALJ's non-disability finding.

The record reflects that Dr. Moses has been providing palliative care to Plaintiff since at least April, 2003. (Tr. 101-117, 150-58).  The notations on his office notes are somewhat difficult to decipher, but in general reflect a pattern of mostly monthly office visits to check on Plaintiff's status of his degenerative disc disease of his spine, neck and shoulder pain, and arthritic knees, and to refill his medications. (Tr. 101-17, 150-58).  They also reflect that Dr. Moses has recommended both a pain clinic and MRI of his neck and/or spine, neither of which Plaintiff can afford. (Tr. 106, 108, 111).

Mr. Lawson also provided Physical and Mental Medical Assessments of Ability to do Work-Related Activities, both completed by Dr. Moses on November 7, 2005. (Tr. 160-64). Dr. Moses opined that, from a physical standpoint, Mr. Lawson could lift 10 pounds on a frequent basis and 15 pounds occasionally. He restricted him to a maximum of 2 hours of standing/walking in an 8-hour day, and similarly restricted him to a maximum of 2 hours of sitting in an 8-hour day. (Tr. 161). He further indicated that he should never climb, stoop, kneel, balance, crouch, or crawl; that his abilities to reach, handle, and push/pull are limited because they increase his pain; and that he should not be exposed to heights, moving machinery, temperature extremes, humidity, or vibration. (Tr. 162).

Plaintiff underwent a physical examination by Joseph Koenigsmark, D.O. on September 29, 2004, at the behest of the state disability division. (Tr. 96-100). Dr. Koenigsmark's diagnostic impression based upon his clinical examination was that of "osteoarthritic changes most significantly noted in the thoracic spine on x-ray as well as in the shoulder areas and the knees." (Tr. 99). He also opined that Plaintiff's "ability to lift, carry and move heavy objects would have to be altered so as not to worsen these conditions" and that weight restrictions and a sit/stand option were appropriate. (*Id.*).

Based upon Dr. Koenigsmark's examination and Dr. Moses' then-available records, a Physical RFC Assessment was completed October 14, 2004, by state agency physician Deborah Hibbard. (Tr. 120-27). Based upon that information, she opined that Plaintiff was capable of medium level work, and could stand, walk, or sit up to a maximum of 6 hours in an 8-hour day. She further noted that Plaintiff's ability to push/pull was unlimited; that he should only occasionally climb ladders/ropes/scaffolds, kneel, crouch, or crawl; was limited in his ability to reach in all directions, including overhead; and should avoid

5

concentrated exposure to extreme cold, vibration, and workplace machinery, heights and other hazards. (*Id.*). These assessments were repeated in a subsequent Physical RFC Assessment of January 12, 2005, by state agency physician P. Saranga. (Tr. 142-48).

As noted above, ALJ Alderisio ultimately found Plaintiff to have an RFC for light exertional work, that he was capable of lifting 10 pounds frequently and 20 pounds occasionally, and was capable of sitting, standing, and/or walking up to 6 hours, with a sit/stand option being required. (Tr. 23). Plaintiff challenges the ALJ's rejection of Dr. Moses' more restrictive limitations on these points.

Generally, the opinions of treating physicians are given substantial, if not controlling, deference in social security disability proceedings. *See* 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2); *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387 (6th Cir. 2004). An ALJ must give the opinion of a treating source controlling weight in a social security disability case if (1) he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) the opinion is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2); *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541 (6th Cir. 2004). Moreover, even where a reviewing court finds that substantial evidence supports the ALJ's decision, the agency's regulations require the ALJ to give "good reasons" for a decision not to give controlling weight to a treating physician's opinion. *Wilson,* 378 F.3d at 545. The failure to do so will ordinarily dictate a remand.

In the current matter, Plaintiff's challenge as to the above-noted points is unavailing. In his decision, ALJ Alderisio remarked that he was giving "little weight" to the opinions of Dr. Moses. (Tr. 22). In doing so, he noted that the treating physician opinions were not

supported by Dr. Moses' own records, which reflected conservative treatment and that Plaintiff's condition was stable, nor did the records contain any mention of weight and sit/stand/walk work limitations, let alone those as restrictive as assessed by Dr. Moses. Thus, the ALJ fulfilled the requirements of *Wilson*, at least as to these particular RFC components, based upon the record that was then before him.

Plaintiff also argues that the ALJ ignored the opinions of the state agency physicians. A review of his decision reveals otherwise. He expressly notes that he considered the findings of fact of those physicians, but that Plaintiff is more limited than the medium level of exertion assessed by those physicians. (Tr. 23). Thus, the decision illustrates that the ALJ's RFC findings as to Plaintiff's weight restrictions and sit/stand/walk limitations were based upon striking a balance of the medical evidence of Dr. Moses, Dr. Koenigsmark, and the state agency physicians, combined with Plaintiff's own testimony. Such is within the exclusive province of the ALJ, as it is he who ultimately determines RFC, not the medical sources. *See* 20 C.F.R. §§ 404.1546 & 416.946; *Clinker v. Apfel,* 2000 WL 1234325 (6th Cir.) (rejecting argument that ALJ erred by "creating" his own RFC and noting the relevant question is "whether the ALJ's assessment was supported by substantial evidence").

However, this does not end the analysis of Plaintiff's physical abilities, for he also takes issue with the ALJ's consideration of other restrictions assessed by the state physicians. In his RFC finding, the ALJ concluded Mr. Lawson was capable of only occasional stooping, bending, crouching, and crawling and should avoid climbing ladders and scaffolds. (Tr. 23). This, in fact, is consistent with the opinions on such points offered by the state agency physicians, though not as restrictive on these points as opined by Dr.

7

Moses, who indicated he should never do such things.  As noted, the ALJ has adequately articulated his reasons for giving less weight to these opinions by Plaintiff's treating physician.  But the RFC stated in his decision made no findings of any reaching limitation. Based upon the record and the applicable standard for the ALJ's review of such medical evidence, Plaintiff's contention on this point is well-taken, as the opinion assessments of such a limitation are uncontradicted. (*See* Dr. Moses at tr. 162 and state agency RFCs at tr. 123, 144).  To the extent Dr. Koenigsmark's report is silent as to reaching specifically, it does reflect decreased range of motion of his shoulders generally. (Tr. 98).  Moreover, and as Plaintiff also points out, Dr. Koenigsmark's exam includes x-rays of only the thoracic and not the cervical spine.  The ALJ remarks that Dr. Moses' office notes contain no further notation after June, 2004 of Plaintiff having been seen for shoulder pain; however, this is factually incorrect. (*See* tr. 104, chief complaint 9/10/04 of shoulder, neck and knees; chief complaint 7/6/04 of shoulder pain checkup; tr. 157, chief complaint of shoulder, neck, knee pain; and tr. 155, decreased range of motion secondary to pain with complaints of cramps in legs, back and neck).

Most important, however, to the Court's determination that this matter should be remanded for further consideration is the ALJ's discussion of Plaintiff's restrictions or limitations due to mental impairments, or more accurately the lack of such discussion.  The record evidences that a Psychiatric Review Technique was completed by Dr. Lea Perritt on January 10, 2005 (tr. 128-40) when such non-examining consultation was requested after Plaintiff indicated on a pain report that he was depressed (tr. 141).  Dr. Perritt opined that Mr. Lawson had no medically determinable mental impairment. (Tr. 128).  But Plaintiff's treating physician subsequently opined in November of 2005 that, due to chronic pain

8

resulting in anxiety, difficulty coping, and depression, Plaintiff had only a fair ability to deal with the public, follow complex or detailed job instructions, maintain his personal appearance, relate predictably in social situations, and demonstrate reliability. (Tr. 163-64). While this constitutes the entirety of the medical mental impairment evidence of record, and while perhaps these limitations can be easily distinguished as the Commissioner suggests, it does not change the reality that the ALJ's decision is devoid of even their mention, let alone their consideration.

The Sixth Circuit has held that, although substantial evidence may otherwise support the decision of the Commissioner, reversal is required where the agency fails to follow its own procedural regulation, which was intended to protect applicants. *See Wilson,* 378 F.3d at 544 (citing *Halloran v. Barnhart,* 362 F.3d 28, 32-33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.")). The requirement implicated in *Wilson* is the same one at issue in the case at bar, §§ 404.1527(d)(2) and 416.927(d)(2). Pursuant thereto, the Commissioner must always give "good reasons" for the weight given to the claimant's treating source's opinions. The Social Security Administration, in an interpretation of its own regulations, has explained that a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5.

Despite whatever shortcomings of Dr. Moses' Medical Assessment of Ability to do Work-Related Activities (Mental) (tr. 163-64), a decision by the ALJ to ignore it completely is not an insignificant determination. Thus, given the SSA's promise to claimants that ALJs "will evaluate every medical opinion [they] receive," 20 C.F.R. §§ 404.1527(d) and 416.927(d), remand is compelled in this case.

### III.  CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found not to be supported by substantial evidence and is hereby **REVERSED,** with this action **REMANDED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #11) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #9) is hereby **GRANTED.**

A Judgment reversing and remanding this matter will be entered contemporaneously herewith.

Dated this 22nd day of September, 2008.



Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\6-07-195-LawsonMOO.wpd